**STATE of Indiana, Appellant,**

v.

**Frank G. MOORE, Appellee–Defendant.**

**No. 49A04–0301–CR–20.**

Court of Appeals of Indiana.

Sept. 30, 2003.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, the State of Indiana, appeals from the trial court's granting of Frank Moore's Motion to Suppress Evidence discovered during the search of an automobile which he had been driving. The State presents one issue for our review, which we restate as whether the arresting officer could properly search the passenger compartment of the vehicle as a search incident to arrest or for officer safety. Moore also presents one issue upon appeal: whether the appeal should have been dismissed because of the State's failure to seek from this court an order compelling the trial court clerk to complete the clerk's record and issue, file, and serve the Notice of Completion.

We affirm.

In the late evening hours of June 23, 2002, Officer Brian Zotz of the Indianapolis Police Department observed a new model Mitsubishi Gallant in the area of 34th Street and Carrollton Avenue. Believing that the automobile was out of place in that neighborhood, he followed it. The Gallant, driven by Moore, stopped at the stop sign at the intersection of 33rd and Carrollton. The car then turned left without signaling the left turn. Officer Zotz then initiated a traffic stop.

Officer Zotz orally learned Moore's identification and a subsequent check indicated that Moore's driver's license had been suspended and that Moore had a previous violation of that suspension. Officer Zotz then asked Moore to step out of the vehicle and placed him under arrest. Besides Moore, there were two passengers in the car. Elaine Miller, who owned the car, was sitting in the front passenger seat, and Moore's friend, J.J.,[1] was sitting in the backseat. Both Ms. Miller and J.J. were removed from the car by an officer who arrived to provide backup for Officer Zotz. During a subsequent search of the passenger compartment of the vehicle, Officer Zotz found a .38 caliber handgun under the driver's seat. Moore admitted that the gun belonged to him.

Moore was subsequently charged with unlawful possession of a handgun by a serious violent felon as a Class B felony, carrying a handgun without a license as a Class A misdemeanor, and driving while suspended as a Class A misdemeanor. Af-

---

1. The testimony did not indicate J.J.'s full name.

ter a hearing upon Moore's motion to suppress, the trial court determined that the evidence of the presence of the handgun should be suppressed. The State appeals that ruling.

We first address the issue presented by Moore, namely, whether the appeal should be dismissed. According to Indiana Appellate Rule 10(B), the trial court clerk must assemble the Clerk's Record and issue, file, and serve its Notice of Completion of the Clerk's Record ("Notice of Completion") within thirty days from the filing of the Notice of Appeal. If the trial court clerk fails to timely issue the Notice of Completion, the appellant shall seek an order from the court on appeal to compel completion of the record within fifteen days after the Notice of Completion was due. Ind.App. Rule 10(F). Failure to seek such order within the time frame established by the rule shall subject the appeal to dismissal. *Id.*

▪ In this case, the Notice of Completion was not filed within thirty days after the Notice of Appeal. The State did not seek an order from this court to compel the trial court clerk to complete the record and file the Notice of Completion. Nonetheless, the trial court clerk filed a Notice of Completion one day after the fifteen day deadline by which the State was required to request an order compelling the trial court clerk's action. In essence, the trial court clerk provided notice that the record was complete sixteen days after it was due without any order compelling such action.

Moore filed a motion with this court on March 18, 2003, seeking the dismissal of the appeal for the State's failure to follow the appellate rules in that the State did not seek the order to compel. By order of the motions panel of this court, dated May 1, Moore's motion seeking dismissal was denied. In the order, the motions panel noted that the Notice of Completion was filed within one day of the date the State's motion to compel completion of the clerk's record should have been filed. Accordingly, the motions panel determined that Moore suffered no prejudice by the late filing of the Notice of Completion.

Even though the motions panel of this court has already ruled upon this issue, we may reconsider that ruling. *See Davis v. State,* 771 N.E.2d 647, 649 n. 5 (Ind.2002) (citing a law review article which discusses the reluctance of this court to review issues decided by the motions panel, but noting that those decisions do not preclude us from reconsidering issues decided upon a motion). Appellate Rule 10 may be read to state that an appeal must be dismissed if an appellant fails to seek an order of the appellate court to compel a trial court clerk to complete the clerk's record. It evinces a clear intention that the appellant take action if the Notice of Completion is not timely filed because the rule states that the "appellant *shall* seek an order." App. R. 10(F). *See Hoang v. Jamestown Homes, Inc.,* 768 N.E.2d 1029, 1036 (Ind. Ct.App.2002) (stating that a trial court was required to take a certain action when the applicable local rules used the word "shall"), *trans. denied.* However, we do not believe that such a reading of Appellate Rule 10 coincides with the preference that we apply an ameliorative approach to remedy failures by the parties to provide a complete record upon appeal. *See Johnson v. State,* 756 N.E.2d 965, 967 (Ind. 2001) (stating that less stringent measures should initially be applied when a party fails to follow the applicable rules in a criminal case and that more stringent measures should be applied when a party inexcusably fails to comply with an appellate court order).

Moore could not have been prejudiced by the State's failure to comply with the applicable rule and to request an order

compelling the trial court clerk to complete the clerk's record. As duly noted by the motions panel, the Notice of Completion was filed the day following the fifteen day deadline for the State's request. Because Moore was not prejudiced and a long delay did not result from the State's failure to take action, we see no reason to part with the decision of the motions panel denying Moore's motion seeking dismissal. Nonetheless, we caution the State in regard to its failure to comply with Appellate Rule 10. Had a long delay resulted because of the State's failure to act, dismissal may have been warranted.

Turning to the merits of this appeal, we must determine whether the trial court properly granted Moore's motion to suppress.[2]

Despite the fact that Article 1, Section 11 of the Indiana Constitution and the federal Fourth Amendment share the same language, our Supreme Court has made an explicit point to interpret and apply Section 11 independently of federal Fourth Amendment jurisprudence. *See Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). Therefore, it is possible that the Indiana Constitution may prohibit searches which the federal Constitution does not. Based upon the applicable federal law, Moore concedes[3] that the search

of the automobile he was driving was constitutional.[4] However, he contends that under the Indiana Constitution a different result obtains and that the rule supports the trial court's ruling.

The purpose of Article 1, Section 11 of the Indiana Constitution is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). Each case must be considered upon its own facts to decide if the police behavior was reasonable. *Id.* In order to guarantee the people against unreasonable searches and seizures, the provision must receive a liberal construction in its application. *Id.* The question is whether under the totality of the circumstances, reliance by the police upon their own information in deciding to search appellant's car was reasonable. *Id.* at 79–80. The State bears the burden of proving that the search was reasonable under the totality of the circumstances. *Mitchell*, 745 N.E.2d at 786.

The State's argument focuses upon two grounds to support the search of the car following Moore's arrest. The first is that the search was permissible as a search incident to a lawful arrest. The second is that the search is constitutional because of officer safety concerns.[5]

**2.** In a footnote in its brief, the State concluded that the trial court erred in determining that Moore had standing to challenge the search of the automobile. However, the State chose to present no argument upon that issue because of its view that the search was clearly valid and therefore dispositive. Moore's counsel addressed the standing issue in order to refute the State's claim that Moore did not have standing. We commend Moore's counsel for taking the cautious approach and addressing the issue. However, because the State clearly expressed its intention to disregard that issue, we do not address it.

**3.** Moore's concession only goes so far as to say that the search was reasonable under the

Fourth Amendment if the arrest was lawful. However, he presented no argument challenging the lawfulness of the arrest, so for purposes of this decision, we assume that it was.

**4.** In *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court of the United States held that when a police officer has made a lawful custodial arrest of an occupant of a vehicle, the officer may search the passenger compartment of the vehicle as a contemporaneous incident of that arrest.

**5.** Two historical rationales for the search incident to arrest exception to the warrant requirement are the need to disarm the suspect

At the hearing, conflicting evidence was presented regarding the timing of the search of Moore's person and the search of the car. Officer Zotz testified that he searched Moore and found eighteen .38 caliber pistol cartridges in a pouch on Moore's belt. Officer Zotz testified that he then had the other individuals removed from the car and that a subsequent search resulted in the discovery of a .38 caliber handgun. On the other hand, the record reflects that Ms. Miller stated that after all three of them were removed from the car, Officer Zotz searched the car and found a handgun. Ms. Miller indicated that Officer Zotz searched Moore and found the pouch containing the ammunition after the handgun was found in the car.

The trial court entered a written order setting forth its findings of fact and conclusions of law. In it, the trial court noted that the sequence of events was in dispute. No specific finding was made as to whether the trial court believed Officer Zotz or Ms. Miller. However, the trial court found that even if the officer's testimony reflected the correct sequence of events, the search was not made for the reason that the officer was fearful for his safety.

The discrepancy regarding the timing of the search of Moore's person and the car has made our review somewhat difficult. As stated in the discussion of the standard of review, we view the conflicting evidence in the light most favorable to the trial court's ruling.[6] On one hand, it is possible to conclude that the trial court necessarily did not believe Officer Zotz's testimony that he found the ammunition before he conducted the search for the handgun. Otherwise the finding of ammunition would lend itself to the conclusion that an individual is armed and that because that individual is being arrested, the officer, out of concerns for safety (even if not articulated), could search a vehicle which the defendant was driving.

An alternative view is that it is irrelevant which version of events the trial court believed because the trial court believed that to be reasonable under Section 11, the officer must articulate some facts which indicate that the search of the car was

---

in order to take that person into custody and the need to preserve evidence for later use at trial. *Gibson v. State*, 733 N.E.2d 945, 953 (Ind.Ct.App.2000) (a Fourth Amendment analysis citing *United States v. Robinson*, 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). In expanding upon these rationales, this court noted that a police officer will typically search a vehicle after placing an individual under arrest because the officer has probable cause to believe that contraband or weapons are contained in the vehicle. *Id.* at 955. Further, this court noted that an officer will search a vehicle after placing an occupant under arrest when he or she is concerned about his or her safety because of furtive or threatening behavior on the part of the occupant of the vehicle. *Id.*

In regard to a search for reasons of officer safety following an arrest, there can be no requirement that an officer witness furtive or threatening behavior before being allowed to search the *person* of the individual being placed under arrest. It is necessarily reasonable that an officer perform a search of an individual to check for weapons before placing the suspect into a police car for transportation. It is also necessary for the safety of the officers and other inmates that a suspect be disarmed before being placed in the population at a jail or detention facility. The reasoning expressed in *Gibson* that an officer may search a vehicle when he witnesses furtive or threatening behavior, while part of a Fourth Amendment analysis, is applicable to Section 11 of the Indiana Constitution as well. This principle will be discussed in greater detail throughout the remainder of this decision.

**6.** Other than the conflict concerning the sequence of the searches, the parties tend to agree upon the relevant facts.

necessary, and therefore reasonable. This interpretation of the situation has merit. In determining that the State had not met its burden to establish the reasonableness of the search, the trial court acknowledged the view that some justification was required, such as to locate evidence in connection with the crime and which might be destroyed if not secured or a search for officer protection. In discussing the rationales which would justify the search of the automobile, the trial court, through a series of rhetorical questions, expressed its concerns regarding the facts of this case. The first question posed by the trial court was: "Moore was stopped for a traffic infraction and then arrested for a moving traffic misdemeanor. What search was necessary?" Order on Defendant's Motion to Suppress at 5. Implicit in this question is the notion that a routine traffic violation is not the type of criminal act which should automatically give an officer a reason to search a vehicle. The second rhetorical question asked by the trial court was: "if the officer is not fearful for his safety, how can the search be for his protection?" *Id.* at 6. The trial court concluded that Officer Zotz never indicated a concern for his safety, and without articulating a reasonable suspicion for his search of the passenger compartment, the State's argument failed.

We note that the issue before us is identical to that faced by the United States Supreme Court in *Belton* in 1981. As previously stated, the Supreme Court determined under the Fourth Amendment that a police officer may conduct a search of the passenger compartment of a vehicle following a lawful custodial arrest. In reaching that conclusion, the Court relied, in part, upon its holding in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). *Belton*, 453 U.S. at 461, 101 S.Ct. 2860. In *Robinson*, the Supreme Court stated:

"A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." 414 U.S. at 235.

The *Belton* Court, relying upon the principle that a search of a person is justified solely by the fact of the lawful arrest, then concluded that it was reasonable under the Fourth Amendment for a police officer to search a jacket which was found on the backseat of the car in which defendant had been a passenger before he was arrested. 453 U.S. at 462–63, 101 S.Ct. 2860. This conclusion was reached because the jacket was in the car in an area which was within the arrestee's immediate control. *Id.* at 462, 101 S.Ct. 2860.

While this principle is sound and weighs upon our decision, it is not the sole deciding factor. As hereinbefore noted, our Supreme Court has clearly stated on several occasions that we are to view the protections provided by Article 1, Section 11 of the Indiana Constitution as separate and distinct from those of the federal Fourth Amendment. *See e.g., Mitchell,* 745 N.E.2d at 786; *Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind.1999). Under analysis of the situation under Indiana law, we look to the totality of the circumstances to determine whether the State has carried its burden by demonstrating that the search was reasonable. *See Mitchell,* 745 N.E.2d at 786. Therefore, while we recognize the similarities between the Fourth Amendment and Article 1, Section 11, we must adhere to the principle established by our Supreme Court and analyze the facts of this case to determine whether Officer Zotz's actions were reasonable. Further, while experience has shown that analysis under the Indiana reasonableness standard generally obtains the same result as that of the federal Fourth Amendment, it would appear that where a "blanket" exception to the warrant requirement has been created for federal purposes it is appropriate to effect a different result which is based upon the actual considerations at hand according to Indiana's constitutional protections.

On one hand, we have a police officer who is conducting a lawful arrest performing a search of the person he is arresting and the passenger compartment of the car in which the arrestee was riding. In addition, the stop was conducted at night and two other individuals were in the car. Clearly, concerns for officer safety are an important consideration.[7] *See id.* (stating that when government intrusion is challenged under Section 11, reasonableness under the totality of the circumstances may include considerations of officer safety).

On the other hand, there is no evidence that Moore and the two passengers were anything but cooperative with the police officers at the scene. Moore immediately pulled the car over after Officer Zotz activated his lights and he put his hands up and out of the window so that Officer Zotz would not be concerned for his safety. He provided Officer Zotz with correct identification information and there is no indication that Moore resisted when ordered to step out of the car. Once the gun was found, Moore admitted that it belonged to him. During this time, Ms. Miller and J.J. sat on the sidewalk next to the car and waited until they were allowed to leave. A second officer was present at the scene and had control over Ms. Miller and J.J. so that they would not be a threat to Officer

---

**7.** One issue which we leave for another day is how to appropriately view the issue of officer safety when dealing with a search following an arrest. In its brief, the State offers two different rationales for supporting the search, the search incident to a lawful arrest and a search for officer safety. Under the federal Fourth Amendment analysis, the issue of officer safety is wrapped into the search incident to a lawful arrest. *See* footnote 5, *supra.* While such consideration may be appropriate, especially since one cannot dispute that a search of a person for officer safety reasons is proper, the consideration of a search of a vehicle for officer safety as separate from a search as an incident to a lawful arrest may have advantages for increased officer safety. Foremost is the fact that the issue of officer safety may arise regardless of whether an arrest is made. Even though we addressed the issue of officer safety in this decision, whether it is considered as a part of an analysis of a search incident to a lawful arrest or whether it constitutes its own separate exception to the warrant requirement is irrelevant to the resolution of whether Officer Zotz's actions were reasonable.

Zotz. Finally, Officer Zotz did not indicate that he was ever fearful for his safety. With these considerations in mind, we hold that the trial court did not err in concluding that the concern for officer safety did not play a part in the search of the vehicle.[8]

Further, the State's position is unsupported by the fact that Moore was placed under arrest because he committed the offense of driving while suspended and the initial stop was caused by his failure to signal a turn at an intersection.[9] We see no facts which indicate that Officer Zotz needed to search the car in order to find and preserve evidence connected to the crime of driving while suspended, nor can we perceive of any such situation arising out of this charge. These circumstances, in addition to the facts that all parties were cooperative and Officer Zotz apparently lacked fear for his safety, lead to the conclusion that the search of the car was not reasonable under the totality of the circumstances present when the arrest was made.

The trial court's order granting the motion to suppress the evidence of the handgun is affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

---

8. We recognize that there is a fine line that must be considered in determining whether the issue of officer safety is present. The test for whether an officer's safety was at risk should not be turned into a "magic words" test wherein an officer must state that he was concerned for his safety, but there must be some indication, from the facts inherent in the situation if not from the officer's testimony, that safety was at issue. Additionally, by no means should this decision be viewed as a restriction on an officer's ability to protect himself while on the streets. If an officer making an arrest observes conduct which causes the officer to be concerned about his safety, every precaution, including searching the passenger compartment of a vehicle, should be taken.

9. One would presume that some crimes, such as those involving stops and arrests for drugs or weapons, would generally lend themselves to the appropriate conclusion that the search of the vehicle was reasonable. *Cf. Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001) (stating that some offenses inherently give rise to reasonable suspicion that a suspect possesses weapons or contraband). Here, a weapon was found in the car, but only became a concern *after* the search of the car. Other than the presence of the pouch containing the ammunition on Moore's belt, none of the facts of the events before the search of the car lead to the conclusion that Officer Zotz should have been looking for a weapon in the car. Because the evidence of the ammunition being found before the search of the car is conflicted, we do not consider it in the State's favor according to the proposition that we consider conflicting evidence most favorable to the trial court's ruling.