Marcus CHEST, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0907–CR–705.

Court of Appeals of Indiana.

Dec. 23, 2009.

Publication Ordered Jan. 12, 2010.

Suzy St. John, Victoria L. Bailey, Marion County Public Defender Agency, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Marcus Chest appeals his conviction of carrying a handgun without a license, a Class A misdemeanor.[1] For our review, Chest raises a single issue, whether the trial court abused its discretion when it admitted evidence obtained during a police search of his vehicle following his arrest for refusing to provide identification. Concluding the trial court abused its discretion because the search violated Article 1, Section 11 of the Indiana Constitution, we affirm in part, reverse in part, and remand with instructions.

### Facts and Procedural History [2]

On December 5, 2008, Officer Reynolds of the Indianapolis Metropolitan Police Department observed Chest change lanes without signaling, initiated a traffic stop, and asked Chest for his driver's license and registration. Chest replied he had forgotten his license at home. Officer Reynolds then asked Chest to provide his name and date of birth. Chest provided the name and date of birth of his cousin, Cedrick Edwards; however, Chest spelled Cedrick's first name incorrectly as C–E–D–R–I–C. Using the spelling provided by Chest, Officer Reynolds was unable to find a record of a driver's license under the name Cedric Edwards.[3] Officer Reynolds returned to Chest and said "You said that you had a driver's license but I can't find anything. What's your real name?" Transcript at 4. Chest replied, "Well, I told you what my real name was." *Id.* Officer Reynolds testified that at that point "I knew [Chest] was lying so I went a head [sic] and told him to get out of the car and I placed him into custody for refusing to identify." *Id.* at 4–5. Officer Reynolds

---

1. Chest was also convicted of driving while suspended, a Class A misdemeanor, and refusing to provide identification, a Class C misdemeanor. However, Chest does not challenge those convictions on appeal.

2. We heard oral argument on December 8, 2009, at the Court of Appeals courtroom in Indianapolis. We commend counsel for their excellent oral advocacy.

3. Officer Reynolds testified at trial he was later able to obtain a valid driving record using the correct spelling of Cedrick Edwards.

asked Chest for his identity three or four more times, but Chest "refused to give me his information" *Id.* at 5 and 6.

Seeking Chest's identification, Officer Reynolds conducted a pat down search of Chest and looked inside Chest's shoes without success. Officer Reynolds then handcuffed Chest and secured him in the back seat of the police car. Once Chest was secured, Officer Reynolds returned to search Chest's car, looking for his driver's license or other identification. At the trial, Officer Reynolds testified that in his experience, suspects who refuse to provide identification have often hidden their driver's license "in the vehicle in the visor or in the door well or somewhere in the vehicle." *Id.* at 6. While searching the car, Officer Reynolds noticed the rear seat of the car was raised up as if something had been shoved underneath it. Chest was driving the same type of car as Officer Reynolds's police car, and, as a result, Officer Reynolds testified he knew "the seats are made to pull up." *Id.* at 8. Officer Reynolds also testified the rear seat was within easy reaching distance of a person sitting in the driver's seat. Officer Reynolds looked under the seat and discovered Chest's wallet, including his driver's license, sitting next to a loaded handgun. In anticipation of the vehicle being towed, Officer Reynolds later searched the vehicle a second time, looking for "high value items" such as "expensive radio equipment or money or other things." *Id.* at 15.

A review of Chest's driving record revealed his driver's license was suspended and he had six prior citations for driving while suspended. On December 6, 2008, the State charged Chest with carrying a handgun without a license, a Class A misdemeanor, driving while suspended, a

Class A misdemeanor, and refusing to provide identification, a Class C misdemeanor. The trial court held a bench trial on April 30, 2009. During the trial, Chest objected to the admission of the handgun and wallet and moved to suppress the evidence. As grounds for his objection, Chest argued he:

> was not given any of his Pirtle warnings as required under Indiana law therefore it was a violation of his Fourth Amendment rights and his Article 1, Section 11 rights.... In addition, ... the officer['s] ... primary purpose in searching this vehicle was to find [Chest's] identification and to find evidence therefore this was basically just a fishing expedition.

*Id.* at 7. The trial court inquired whether Officer Reynolds was searching incident to arrest, and when Officer Reynolds replied in the affirmative, the trial court overruled Chest's objection and denied his motion to suppress.[4] The trial court convicted Chest on all charges and sentenced him to concurrent one-year sentences on each count all suspended to probation. Chest now appeals.

### Discussion and Decision

### I. Standard of Review

We review the admission of evidence for an abuse of discretion. *Cochran v. State,* 843 N.E.2d 980, 982–83 (Ind.Ct.App.2006), *cert. denied,* 549 U.S. 1122, 127 S.Ct. 943, 166 L.Ed.2d 722 (2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* at 983. In making this determination, we do not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Cole*

---

4. Chest renewed his motion to suppress on cross-examination of Officer Reynolds arguing the initial search was not a valid inventory search because the officer was looking for evidence. The trial court denied the motion to suppress a second time.

*v. State,* 878 N.E.2d 882, 885 (Ind.Ct.App. 2007).

## II.   Waiver of Argument

██  The State argues Chest waived review of his argument on appeal that the search violated his rights under the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution because he did not object to the admission of the evidence on those grounds before the trial court. "A defendant may not object on one ground at trial and raise another on appeal; any such claim is waived." *Saunders v. State,* 848 N.E.2d 1117, 1122 (Ind.Ct.App.2006), *trans. denied.*

Chest objected to the search on the grounds he was not provided with the warnings required under *Pirtle v. State,* 263 Ind. 16, 323 N.E.2d 634 (1975), and the search violated the Fourth Amendment and Article 1, Section 11. On appeal, Chest also argues the search violated the Fourth Amendment and Article 1, Section 11. His argument on appeal is naturally more detailed than that raised at the spur of the moment during the trial, but it is the same argument. Therefore, Chest has not waived his challenge to the admission of the evidence.

## III.   Article 1, Section 11

██  Article 1, Section 11 of the Indiana Constitution states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated . . . ." "While almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application." *Myers v. State,* 839 N.E.2d 1146, 1153 (Ind.2005). To determine whether a search violated the Indiana Constitution, this court must evaluate the reasonableness of the police conduct under the totality of the circum-

stances. *Id.* Although there may be other relevant considerations, in general our determination of reasonableness turns on a balance of: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs." *Hathaway v. State,* 906 N.E.2d 941, 945 (Ind.Ct.App.2009), *trans. denied.* The burden rests on the State to show the intrusion was reasonable in light of the totality of the circumstances. *Id.*

### A.   Occurrence of a Violation

First, Officer Reynolds testified he suspected Chest was providing a false identity because Officer Reynolds was unable to locate any driver's license using the name and spelling given by Chest. Thereafter, Chest refused to provide his true identity to Officer Reynolds despite several commands to do so, and, as a result, Officer Reynolds was justified in believing Chest had committed the crime of refusing to provide identification. However, there is no evidence in the record to indicate Officer Reynolds suspected Chest had committed any other crimes that might justify searching the vehicle for additional evidence.

### B.   Degree of Intrusion

██  Second, in examining the degree of intrusion, we consider the nature of the privacy interest upon which the search intrudes and the character of the intrusion itself. *Litchfield v. State,* 824 N.E.2d 356, 361 (Ind.2005). Here, the degree of intrusion was minimal because the search occurred at night and involved a vehicle that did not belong to Chest, *see Myers,* 839 N.E.2d at 1154 (intrusion on defendant, at least as to public notice and embarrassment, was somewhat lessened because of the hour and place of the search); *Master-*

*son v. State,* 843 N.E.2d 1001, 1007 (Ind. Ct.App.2006) (intrusion lessened because of the hour and place of the search and because defendant did not own vehicle searched), *trans. denied.*

### C. Police Interest

■ Officer Reynolds testified he conducted the search incident to Chest's arrest, seeking Chest's driver's license or other ID. Historically, there are two rationales for the search incident to arrest exception to the warrant requirement: 1) "the need to disarm the suspect" or officer safety; and 2) "the need to preserve evidence for later use at trial." *State v. Moore,* 796 N.E.2d 764, 767 n. 5 (Ind.Ct. App.2003), *trans. denied.* Neither of these rationales apply here. At the time of the search, Officer Reynolds had safely removed Chest from the vehicle, patted him down for weapons, handcuffed him, and secured him in the back seat of the police car. Officer Reynolds had also not seen Chest make any furtive movements when he pulled him over that might have justified a search of the vehicle. *See id.,* 796 N.E.2d at 767 n. 5 ("an officer will search a vehicle after placing an occupant under arrest when he or she is concerned about his or her safety because of furtive or threatening behavior on the part of the occupant of the vehicle."). Therefore, Officer Reynolds's safety was no longer a concern.

There was also no need to preserve any evidence in the vehicle for trial. Chest had refused to identify himself and, in so doing, committed the crime. The relevant evidence to convict Chest would be Officer Reynolds's testimony regarding the refusal, not Chest's driver's license.[5] Officer Reynolds did not have any other probable cause to suspect Chest's vehicle might contain contraband. *Cf. Meister v. State,* 864 N.E.2d 1137, 1145–46 (Ind.Ct.App.2007) (search of vehicle was reasonable under Article 1, Section 11 because officer discovered hollowed-out pen containing powdery residue during search of defendant incident to arrest for driving while suspended), *cert. granted,* — U.S. —, 129 S.Ct. 2155, 173 L.Ed.2d 1152 (2009), *incorporated into opinion on remand,* 912 N.E.2d 412 (Ind.Ct.App.2009).

In addition, we point out the warrantless search was unnecessary. Officer Reynolds had taken Chest, the sole occupant of the vehicle, into custody. Therefore, police department policy required Chest's vehicle to be impounded. Officer Reynolds testified he intended to impound the vehicle and conducted an inventory search prior to towing the vehicle. Presumably, this inventory search would have uncovered the driver's license and gun.[6]

---

5. Indiana Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Indiana Code section 34–28–5–3.5 defines the crime of refusal to provide identification as knowingly or intentionally refusing to provide either one's name, address, and date of birth, or a driver's license to a law enforcement officer who has stopped the person for an infraction or ordinance violation. Therefore, only evidence of Chest's refusal to give his identity is relevant evidence as defined by Evidence Rule 401. Had Chest persisted in his claim he was Cedric Edwards even after being charged and tried, his driver's license might have been relevant evidence to disprove his claim. However, the record is clear that once Officer Reynolds informed Chest he did not believe Chest was Cedric Edwards, Chest repeatedly refused to identify himself to Officer Reynolds.

6. Under a Fourth Amendment analysis, the likelihood the evidence would have been discovered during the inventory search might support the admission of the evidence under the doctrine of inevitable discovery. However, inevitability has not been adopted as an exception to the exclusionary rule under the

Because Officer Reynolds had no further need to protect his safety, did not need to preserve any additional evidence to support Chest's crime of refusing to provide identification, and had no probable cause to suspect Chest had committed any additional crimes, for which Officer Reynolds might expect to find evidence in the vehicle, his search of Chest's vehicle violated Article 1, section 11 of the Indiana Constitution.[7] As a result, the trial court erred when it admitted the evidence obtained during the search. Thus, we reverse Chest's conviction for carrying a handgun without a license and remand with instructions for the trial court to vacate the conviction and sentence imposed thereon. Chest does not challenge his convictions for driving while suspended and refusing to provide identification, and we affirm that portion of the trial court's judgment.

### Conclusion

The search of Chest's vehicle violated Article 1, Section 11 of the Indiana Constitution. Therefore, the trial court abused its discretion when it admitted into evidence the handgun discovered during the search. As a result, we reverse Chest's conviction for carrying a handgun without a license and remand with instructions for the trial court to vacate the conviction and sentence imposed thereon. Chest's convictions for driving while suspended and refusing to provide identification are affirmed.

Affirmed in part, reversed in part, and remanded.

DARDEN, J., and MATHIAS, J., concur.

---

Article 1, Section 11 of the Indiana Constitution. *See Shultz v. State*, 742 N.E.2d 961, 966 n. 1 (Ind.Ct.App.2001), trans. denied.

7. Because we conclude the search violated Article 1, Section 11 of the Indiana Constitution, we need not address Chest's Fourth Amendment issue of whether the trial court

ORDER

Appellant, by counsel, has filed a Motion to Publish.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellant's Motion to Publish is GRANTED, and this Court's opinion handed down in this cause on December 23, 2009, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

DARDEN, ROBB, MATHIAS, JJ., concur.

should have suppressed evidence obtained in a vehicle search conducted prior to the Supreme Court's decision in *Arizona v. Gant*, —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (limiting the authority of police to search a vehicle), but sought to be admitted at a trial conducted after the *Gant* decision.