Cedric LEWIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0908–CR–736.

Court of Appeals of Indiana.

July 27, 2010.

---

Matthew D. Anglemeyer, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Cedric Lewis (Lewis), appeals his conviction for possession of a firearm by a serious violent felon, a Class B felony, Ind.Code § 35–47–4–5.[1]

We reverse.

### ISSUE

Lewis raises two issues on appeal, one of which we find dispositive and which we restate as: Whether the trial court properly admitted the handgun found during a warrantless search of Lewis' vehicle.

### FACTS AND PROCEDURAL HISTORY

On May 22, 2008, at approximately 10:00 p.m., Indianapolis Metropolitan Police Department Officer Romeo Joson (Officer Jo-son) observed a vehicle driven by Lewis exceed the posted speed limit, change lanes without signaling, and cut off another vehicle. Officer Joson initiated a traffic stop of Lewis' vehicle. When Officer Joson approached the vehicle, Lewis placed both of his hands outside the driver's side window. The Officer considered this behavior odd, and when he neared the window, he observed that Lewis was nervous, shaking, and sweating despite the cool temperature. Officer Joson also noticed a female passenger in the vehicle.

Lewis was unable to produce a driver's license, but produced an identification card instead. After checking Lewis' status with the Bureau of Motor Vehicles, Officer Joson determined that Lewis' driver's license had been suspended and decided to arrest him. The Officer returned and asked Lewis to exit the vehicle. Officer Joson placed Lewis in handcuffs and advised him that he was being arrested. Additionally, the Officer asked Lewis if there were any drugs or weapons on his person or in the vehicle. Lewis responded that there were no drugs in the vehicle. Officer Joson patted Lewis down and placed him towards the rear of the vehicle where another officer waited.

Officer Joson then proceeded to the open driver's side door of the vehicle to ask the passenger to exit the vehicle due to Officer Joson's belief that the vehicle would be towed as a result of Lewis' arrest. As the Officer leaned into the vehicle through the open driver's side door to ask the female passenger to exit the vehicle, he saw a handgun between the driver's seat and the center console. Officer Joson then read Lewis his Miranda rights and Lewis admitted that the handgun belonged

---

1. We heard oral argument in this case on April 13, 2010, at Taylor University in Upland, Indiana. We extend our thanks to the students, staff, faculty, and administration for their hospitality, and we commend counsel for the quality of their written and oral advocacy.

to him. Joson eventually discovered that the vehicle was registered to Lewis' passenger.

On May 28, 2008, the State filed an Information charging Lewis with unlawful possession of a firearm by a serious violent felon, a Class B felony, I.C. § 35–47–4–5. On May 20, 2009, a bench trial was held. Prior to trial, Lewis filed a motion to suppress the handgun found during Officer Joson's search of his vehicle. The trial court delayed its ruling on Lewis' motion to suppress and allowed the parties to file post-trial briefs. On June 26, 2009, the trial court denied Lewis' motion to suppress and found Lewis guilty of the charged offense. The trial court ordered Lewis to serve twelve years in the Department of Correction for his Class B felony conviction.

Lewis now appeals. Additional facts will be provided as needed.

## DISCUSSION AND DECISION

Lewis argues that the trial court abused its discretion by admitting the gun at trial because Officer Joson's search of his vehicle violated the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

### I. *Standard of Review*

Lewis originally challenged the admission of the handgun through a pretrial motion to suppress, but appeals following a completed trial where he properly objected to its admission. Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Ackerman v. State,* 774 N.E.2d 970, 974–75 (Ind.Ct. App.2002), *trans. denied.* We review the admission of evidence for an abuse of the trial court's discretion. *Taylor v. State,* 891 N.E.2d 155, 158 (Ind.Ct.App.2008), *trans. denied.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* We do not reweigh the evidence and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Cole v. State,* 878 N.E.2d 882, 885 (Ind.Ct.App. 2007). We also consider uncontroverted evidence in the defendant's favor. *Id.*

### II. *The Fourth Amendment*

■■■ Lewis contends that the State failed to prove an exception to the warrant requirement to justify the warrantless search of his vehicle. The Fourth Amendment to the United States Constitution protects an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures. *Howard v. State,* 862 N.E.2d 1208, 1210 (Ind.Ct.App.2007). This protection has been extended to the states through the Fourteenth Amendment. *Krise v. State,* 746 N.E.2d 957, 961 (Ind.2001). A search warrant is generally a prerequisite to a constitutionally proper search and seizure. *Halsema v. State,* 823 N.E.2d 668, 676 (Ind.2005). When a search or seizure is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search or seizure. *Id.*

Historically, a search incident to a lawful arrest was an exception to the Fourth Amendment's warrant requirement. *See Fentress v. State,* 863 N.E.2d 420, 423 (Ind.Ct.App.2007). However, in *Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the United States Supreme Court significantly limited the ability of law enforcement to search a vehicle incident to arrest. Specifically, the Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time

of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1723. "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id.* at 1723–24. Further, the Court also observed that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe that the vehicle contains relevant evidence." *Id.* at 1719.

In this case, the record lacks any evidence that would establish that Officer Joson needed to search Lewis' vehicle to find and preserve evidence connected to the crime of driving while suspended pursuant to dictates established by *Gant.* Nevertheless, the State now contends that the warrantless search of Lewis' vehicle was justified due to concerns for officer safety.

We have previously recognized that, in addition to detainment, *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) permits a reasonable search for weapons for the protection of the police officer, where the officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. *See also Malone v. State,* 882 N.E.2d 784, 786–87 (Ind. Ct.App.2008). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

As we acknowledged in *Malone:*

Officer safety is of paramount importance. Police officers are daily placed in difficult and dangerous situations, some of which are life threatening. The law has to provide protections for such officers. At the same time, in a free society there must be a reasonable basis for a warrantless search of our persons and homes; hence, our constitutional protections against unreasonable searches and seizures. Between these extremes, courts engage in a very difficult undertaking balancing these competing values and determining where the line separating the reasonable and unreasonable should be drawn.

*Id.* at 787.

Disputing Officer Joson's search based on safety concerns, Lewis focuses this court's attention on our recent opinion in *Washington v. State,* 922 N.E.2d 109 (Ind. Ct.App.2010). In *Washington,* Officer Reynolds initiated a traffic stop of Washington's vehicle because one of the headlights was not working. *Id.* at 110. As a matter of practice, the officer inquired as to whether Washington had any weapons in the vehicle. *Id.* Washington replied that he had a handgun, that it was located beneath the driver's seat, and that he had a valid license to carry the handgun. *Id.* The officer asked him to exit the vehicle and placed Washington in handcuffs. *Id.* As the officer shone his flashlight under the driver's seat to find the handgun, he discovered a baggie containing marijuana next to the handgun. *Id.* at 111. The officer eventually learned that Washington did have a valid permit to carry a handgun. *Id.*

Appealing the denial of his motion to suppress the marijuana, Washington argued that the search of his car was unreasonable and violated the Fourth Amendment. *Id.* Initially, our court acknowledged that a vehicle search may be necessary to ensure officer safety. *See id.* at 112. However, we reversed the denial of Washington's motion to suppress and stated:

Officer Reynolds did not express any concerns for officer safety.... Although Washington admitted that a handgun was present inside of the car, he was at all times totally cooperative with Officer Reynolds. The testimony at the suppression hearing indicated that, during the traffic stop, Washington made no furtive movements, answered the officer's questions, and showed no disrespect to the officer. At the time he searched for the handgun, Officer Reynolds had no information that any crime or violation of law had been or was about to be committed, except for the inoperable headlight infraction.... [W]e conclude that in the absence of an articulable basis that either there was a legitimate concern for officer safety or a belief that a crime had been or was being committed, the search of Washington's car for a handgun was not justified. *Id.* at 112–13. We therefore concluded that the search violated the Fourth Amendment, and the trial court should have suppressed the marijuana discovered during the illegal search. *Id.* at 113.

Likewise, here, we find that no legitimate concern for officer safety existed to justify Officer Joson's search of Lewis' car. Upon initiating a traffic stop of Lewis' vehicle, Officer Joson determined that Lewis' driver's license was suspended and decided to arrest him for driving with a suspended license. After Lewis exited the vehicle, Officer Joson handcuffed him and advised him of his arrest. Additionally, when the Officer asked Lewis if there were any drugs or weapons on his person or in the vehicle, Lewis responded that there were no drugs in the car.

The State now seizes on this statement to claim that this was an indicator that there could possibly be a weapon in the car and therefore the Officer was rightfully concerned for his safety. While Officer Joson might have been concerned about his safety, in light of the facts, we do not believe this concern to be legitimate. Although we understand Officer Joson's apprehension when Lewis did not respond to his question as to whether he had any weapons on his person or in his car, the passenger was allowed to remain in the car, unsupervised and unrestrained. At that point, Officer Joson, if concerned about his safety, could assume that the passenger had the ability to immediately access any weapon that might be inside the vehicle. Yet, despite this potential concern for his safety, Officer Joson "stuck [his] head" inside the driver's side door to tell the passenger to get out of the vehicle because Lewis "was being [placed] under arrest for driving while suspended with the intent of possibly towing the vehicle." (Transcript p. 16). Even though the record does not reveal how far the Officer leaned into the driver's side door, it was sufficiently far to discover a semi-automatic handgun stuck between the driver's seat and the center console. We fail to see why and whether it was necessary for Officer Joson to lean into the vehicle to speak with the passenger. Moreover, as the testimony reflects, Officer Joson did not order the passenger out of the vehicle because he feared for his safety, but rather he told her to get out of the vehicle because Lewis was being arrested and because the vehicle might get towed.

While we do not diminish an officer's safety concern when patrolling the streets, in the case before us, Officer Joson's actions clearly indicate that his apprehension did not raise to the level of a legitimate concern. Therefore, we conclude that the State failed to satisfy its burden of showing that the warrantless search of the vehicle and the seizure of the gun were satisfied.

■ We disagree with the State's claim that our holding today might construe a bright line rule that a police officer can never lean into a vehicle or reposition himself to obtain a better vantage point under the Fourth Amendment. Rather, officers may lawfully position themselves in any manner of ways outside of the vehicle as long as they do not cross into a constitutionally protected area. As soon an officer crosses into a constitutionally protected area without the benefit of a recognized exception to the Fourth Amendment, like here, he is no longer rightfully positioned and is violating the defendant's constitutional rights.

### III. *Article 1, Section 11* *Indiana Constitution*

■ For similar reasons, we find that Officer Joson's search of Lewis' car violated Article 1, Section 11 of the Indiana Constitution. "While almost identical to the wording in the search and seizure clause of the federal constitution, Indiana's search and seizure clause is independently interpreted and applied." *Baniaga v. State*, 891 N.E.2d 615, 618 (Ind.Ct.App. 2008). Under the Indiana Constitution, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind.2005). Although other relevant considerations under the circumstances may exist, our supreme court has determined that the reasonableness of a search or seizure turns on a balance of the *Litchfield* factors: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs. *Baniaga*, 891 N.E.2d at 618. The burden is on the State to show that under the totality of the circumstances, the intrusion was reasonable. *Id.*

Regarding the "officer safety exception," our court has observed that "there is a fine line that must be considered in determining whether the issue of officer safety is present." *State v. Moore*, 796 N.E.2d 764, 771 n. 8 (Ind.Ct.App.2003), *trans. denied.*

The test for whether an officer's safety was at risk should not be turned into a "magic words" test wherein an officer must state that he was concerned for his safety, but there must be some indication, from the facts inherent in the situation if not from the officer's testimony, that safety was at issue. Additionally, by no means should this decision be viewed as a restriction on an officer's ability to protect himself while on the streets. If an officer making an arrest observes conduct which causes the officer to be concerned about his safety, every precaution, including searching the passenger compartment of a vehicle, should be taken.

Here, while Officer Joson testified during the trial that he was concerned about officer safety, his actions indicated otherwise. Even though Lewis made a qualified response to Officer Joson's question about drugs or weapons in the vehicle, the passenger was nevertheless free to remain in the vehicle while unsecured and unsupervised. Instead of exhibiting a concern for his safety when getting the passenger out of the vehicle, Officer Joson stuck his head into the driver's side door and told the passenger to exit the car because Lewis was being arrested and the car might get towed. Based on the totality of the circumstances, we cannot conclude that the State satisfied its burden that Officer Joson's intrusion in Lewis' vehicle was reasonable pursuant to Article 1, Section 11 of the Indiana Constitution.

## CONCLUSION

Based on the foregoing, we conclude that the search of Lewis' vehicle violated the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Therefore, the trial court abused its discretion when it admitted the gun which was discovered as a result of this illegal search.

Reversed.

KIRSCH, J., concurring in result with separate opinion.

MATHIAS, J., dissenting with separate opinion.

KIRSCH, J., concurring in result.

The record before us fails to answer each of the following questions: (1) Where was the officer when he first saw the gun? (2) How far did the officer lean into the vehicle through the open driver's side door? (3) Why did the officer fail to take any action to determine the ownership of the car before deciding that the car would have to be towed? (4) Why it was necessary for the officer to lean into the vehicle to speak with the passenger? (5) Whether the officer placed his hand on the driver's seat when he leaned into the car? (6) If so, whether and to what extent the officer pressed down on the driver's seat in any way when he leaned into the vehicle; (7) Where the gun was located *vis-à-vis* the driver's seat and the center console? (8) Whether the gun was in plain view? (9) Whether the gun would have been visible from outside the vehicle? (10) Finally, and perhaps most critically: If, as State contends, the warrantless search here at issue was justified because of officer safety concerns, why did the officer act contrary to those concerns and to established police safety protocols in approaching the vehicle on the side closest to traffic and in leaning into the vehicle through an open car door to confront an unknown, and potentially dangerous, passenger who may have had ready access to a gun?

In the absence of answers to the foregoing questions, the State failed to satisfy its burden of showing that the warrantless search of the vehicle and the seizure of the gun were justified. On the one extreme, the gun may have been within the plain view of the officer from outside the vehicle. On the other, the officer's intrusion into the vehicle may have been purposefully designed to allow him to conduct an unjustified search under the pretext of officer safety.

Because the record fails to answer these questions, I cannot conclude as Judge Riley does in her lead opinion that the officer safety concerns here were not legitimate, nor can I conclude as Judge Mathias does in dissent that the State carried its burden to establish such legitimacy.

I believe that we are unable to answer these questions from the record before us and that, without such answers, the State failed to satisfy its burden to prove that the search here at issue was justified.

MATHIAS, J., dissenting.

I respectfully dissent. I would conclude that the search of Lewis's vehicle did not violate the Fourth Amendment of the United States Constitution or Article 1, Section 11 of the Indiana Constitution.

In reaching her conclusion, Judge Riley relies on *Washington v. State,* 922 N.E.2d 109 (Ind.Ct.App.2010) and *State v. Moore,* 796 N.E.2d 764 (Ind.Ct.App.2003), *trans. denied,* in which our court concluded that the warrantless searches under consideration could not be justified by the officer safety exception. In *Washington,* the defendant, who was the only person in the vehicle, admitted to the presence of a handgun and was completely cooperative

with the officer. 922 N.E.2d at 112. In *Moore,* the defendant and his passengers were removed from the vehicle and under the control of two officers on the scene. 796 N.E.2d at 770–71.

The traffic stop at issue in this appeal occurred on May 22, 2008 at 10:00 p.m. Although Lewis was cooperative with the officer, he exhibited nervous behavior a bit out of the ordinary. After determining that Lewis's driver's license had been suspended, Officer Joson removed Lewis from the vehicle and placed him in handcuffs.

Officer Joson then asked Lewis whether there were drugs and weapons in the vehicle. After Lewis responded that there were no drugs, Officer Joson had a reasonable suspicion that there was a weapon in the vehicle. The officer was then reasonably concerned for his safety because the passenger had not yet been asked to exit the vehicle and had the ability to immediately access any weapon that might be inside the vehicle. Officer Joson chose to return to the vehicle on the side of the open driver's door, to lean into the passenger compartment, and to ask the passenger to exit the vehicle. Judge Riley seems to rely on this decision when it concludes, "[w]hile Officer Joson might have been concerned about his safety, in light of the facts, we do not believe this concern to be legitimate." Op. at 879.

Each Fourth Amendment and/or Article 1, Section 11 case is extraordinarily fact-sensitive. I can wish in 20/20 hindsight that the record was a bit more complete in explaining why Officer Joson chose to walk back to the vehicle and lean into the area of the open driver's door to order the female passenger to exit the vehicle in preparation for the tow, rather than use the onboard public address system that is part of most every police vehicle. Similarly, I can wish that Officer Joson had been asked and fully explained on the record why he still felt concerned for his safety if he was willing to lean into the area of the open driver's door.

The officer safety exception to the warrant requirement in the context of a motor vehicle at the side of a road will never fit within bright line rules, and I am concerned that Judge Riley's opinion begins to take the law there. Officer Joson's behavior, while questionable in purely logical terms, was human. He knew that there might well be a weapon in the vehicle and that there was a passenger who remained there. Under the unique facts and circumstances of this case, those two pieces of information were enough to justify the warrantless search of this particular vehicle at the side of the road. *Washington* and *Moore* are both distinguishable in important details that bear on the totality of the circumstances presented to the officers involved in those cases and this.